FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 29, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COLLYN R., | NO:  2:20-CV-03157-LRS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 21, 22.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney Kathryn Higgs.  The Defendant is represented by Special Assistant United States Jeffrey E. Staples. The Court has reviewed the administrative record and the parties' completed

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER ~ 1

briefing and is fully informed.  For the reasons discussed below, the court

**GRANTS** Defendant's Motion for Summary Judgment, ECF No. 22, and **DENIES**

Plaintiff's Motion for Summary Judgment, ECF No. 21.

## JURISDICTION

Plaintiff Collyn R.[2] protectively filed for supplemental security income on

March 28, 2018, alleging an onset date of August 1, 2015.  Tr. 197-202.  Benefits

were denied initially, Tr. 100-08, and upon reconsideration, Tr. 112-18.  Plaintiff

appeared for a hearing before an administrative law judge ("ALJ") on August 12,

2019.  Tr. 38-63.  Plaintiff was represented by counsel and testified at the hearing.

*Id*.  The ALJ denied benefits, Tr. 13-37, and the Appeals Council denied review.  Tr.

1.  The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and

transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

Only the most pertinent facts are summarized here.

Plaintiff was 58 years old at the time of the hearing.  Tr. 42.  She graduated

from high school and took some college courses while she was in high school.  Tr.

43.  Plaintiff lives in a cabin on her ex-husband's property.  Tr. 42-43.  She has

work history as a bartender, bar manager, housekeeping cleaner, and food service

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first
name and last initial.

manager.  Tr. 48-49, 58-59.  Plaintiff testified that after she was attacked by a dog

at her last job, she cannot work because she is panicked and anxious around

people, and cannot communicate or remember words because of the anxiety.  Tr.

44-45.  She testified that she feels unstable and gets anxiety around groups of

people, and she has difficulty trusting people.  Tr. 51, 55.  She grocery shops

quickly and in the early morning to avoid people and dogs, and she does not use

public restrooms.  Tr. 56.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  If the evidence in the record "is

susceptible to more than one rational interpretation, [the court] must uphold the

ORDER ~ 3

ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

ORDER ~ 5

1    At step four, the Commissioner considers whether, in view of the claimant's

2  RFC, the claimant is capable of performing work that he or she has performed in

3  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

4  capable of performing past relevant work, the Commissioner must find that the

5  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

6  performing such work, the analysis proceeds to step five.

7    At step five, the Commissioner considers whether, in view of the claimant's

8  RFC, the claimant is capable of performing other work in the national economy.

9  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

10  must also consider vocational factors such as the claimant's age, education and

11  past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

12  adjusting to other work, the Commissioner must find that the claimant is not

13  disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

14  other work, analysis concludes with a finding that the claimant is disabled and is

15  therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

16    The claimant bears the burden of proof at steps one through four above.

17  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

18  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

19  capable of performing other work; and (2) such work "exists in significant

20  numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

21  700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

ORDER ~ 6

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 28, 2018, the application date.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments: PTSD, major depressive disorder, single episode.  Tr. 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should have no public contact and occasional, superficial contact with a small group of coworkers, with no teamwork.

Tr. 20.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 29.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: machine packager, stores laborer, and hand packager.  Tr. 30.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since March 28, 2018, the date the application was filed, through the date of the decision.  Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 21.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly considered Plaintiff's symptom claims;

ORDER ~ 7

2.  Whether the ALJ properly weighed the medical opinion evidence;

3.  Whether the ALJ erred at step three; and

4.  Whether the ALJ erred at step five.

## DISCUSSION

### A.  Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

ORDER ~ 8

determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 21.

### 1. Improvement

First, the ALJ found that "[g]iven the evidence of improved symptoms and functioning and [Plaintiff's] capacity for vocational rehabilitation, it seems unlikely that her symptoms would completely interfere with her ability to maintain employment." Tr. 24. A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits).

In support of this finding, the ALJ cites consistent evidence of improvement across the longitudinal record, including treatment notes in February 2017 that

ORDER ~ 9

Plaintiff was slightly better since he had last seen her; reports in April 2017 that she felt better, and she declined a medication trial; notes in July 2017 that Plaintiff had made meaningful improvement with treatment; notes in September 2017 that Plaintiff's depression was lifting; a note in October 2017 that Plaintiff was accomplishing more despite her anxiety and was less avoidant; and more notes of improvement in October 2017.  Tr. 21-22 (citing Tr. 400, 402, 407, 419, 421, 426-27, 429 ("she shows meaningful improvement on the screening metrics"), 474, 481, 581 (she is functioning in a more effective manner and becoming less avoidant).  The ALJ acknowledged that Plaintiff's symptoms "regressed somewhat in mid-2018 when a retraining plan was not approved," but in 2018 treatment notes again indicate that Plaintiff's symptoms were well-managed for extended periods and she seemed fairly functional; her treating provider noted that she "had made significant gains in therapy and that the gains were translating into learning practical steps to advance her return to work"; she was noted to have stable symptoms in October 2018; and her depression improved in November 2018 in response to her time-loss benefits being reinstated.  Tr. 23, 491, 494-95 ("communicating effectively with persons in her life"), 499 (managed exposure to a dog), 503 (making concrete progress), 505, 755 (doing better at grocery shopping), 761, 960 ("translating this learning into practical steps that are advancing her return to work plan"), 1056-57, 1081-84, 1094.

In 2019, Plaintiff reported her symptoms improved since she was in the process that would eventually allow her to find employment at a job without public

ORDER ~ 10

contact; in May 2019 she was noted to be making gains with treatment and her

depression and anxiety had improved overall; and in July 2019 Plaintiff was noted

to be stable even after having an experience with a dog in a store.  Tr. 24, 1113

(reporting she is much stronger than she was a year and a half ago), 1119, 1128

(noting overall improvement in the depression and anxiety measures), 1133 (noting

excellent motivation), 1140 (noting improvement in memory), 1145 (noting

Plaintiff is clearly capable of participating in vocational retraining).  Finally, the

Court notes that the ALJ cited objective evidence of no significant problems with

memory or concentration in mental status examinations.  Tr. 21-22 (citing Tr. 344,

392); see *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the medical

evidence is a relevant ant factor in determining the severity of a claimant's pain

and its disabling effects).

Plaintiff argues that "[w]hile it is true that [Plaintiff] experienced times when

her mental health symptoms improved, she also experienced times of regression,

and she has not reached the point where counseling is not needed."  ECF No. 21 at

6-8 (citing *Holohan*, 246 F.3d at 1205 ("it is error for an ALJ to pick out a few

isolated instances of improvement over a period of months or years and to treat

them as a basis for concluding a claimant is capable of working").  In support of

this argument, Plaintiff cites findings from Dr. Williams, Plaintiff's treating

provider, who noted that she "has a significant degree of social discomfort and

avoidance" in April 2017, "PTSD elements remain prominent" in July 2017, "she

continues to be vulnerable to very intense anxiety" in October 2017, and she has a

ORDER ~ 11

"continued need for ongoing mental health treatment due to severe impairments that continue to result in severe limitations in interacting with people" in March 2018.  ECF No. 21 at 7 (citing Tr. 411, 461, 483, 1067-69, 1126 (noting she is vulnerable to relapse but also she is "working diligently in her psychotherapy").  Plaintiff also cited an independent medical evaluation in August 2018 that noted she "presented in a deteriorated and distraught fashion," and recommended she should be afforded treatment while she is going through retraining.  Tr. 761.

However, as noted by Defendant, "[a]lthough Plaintiff may have regressed at times, overall, her symptoms had gradually improved since she started therapy, as shown by her monthly depression, anxiety and PTSD screenings.  Dr. Williams elaborated on these screenings, mostly noting Plaintiff had made 'significant gains in therapy' or 'some gains in her psychiatric treatment, as reflected in an overall improvement in the depression and anxiety measures.'"  ECF No. 22 at 5-6 (citing Tr. 526, 539, 552, 626, 896, 908, 926, 960, 1053-54, 1076, 1128, 1144).  Moreover, as discussed in detail above, the ALJ cited treatment notes observing consistent symptom improvement throughout the adjudicatory period.   Thus, despite evidence that could be considered favorable to Plaintiff, the ALJ reasonably concluded that longitudinal evidence of effective treatment of Plaintiff's claimed mental impairments was inconsistent with her allegations of incapacitating limitations.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's

conclusion must be upheld).  This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 2. Daily Activities

Second, the ALJ found that Plaintiff's activities of daily living "were less limited than would be expected given her allegations of disabling symptoms and limitations," and similarly, "treatment notes show reports of some activities that seem inconsistent with [Plaintiff's] allegations."  Tr. 24.  As noted by Plaintiff, a claimant need not be utterly incapacitated in order to be eligible for benefits.  ECF No. 11 at 17 (citing *Fair*, 885 F.2d at 603); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability.").  Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

In support of this finding, the ALJ cites evidence of Plaintiff's ability to live in a cabin by herself, including hauling water and firewood; do housework and prepare meals for her former spouse; spend time studying and doing other activities that she enjoyed such as reading, writing, drawing, and playing the violin; shop in stores; drive a vehicle; handle money; do small woodworking projects; spend time on the coast; doing gardening which "helped her feel calm."  Tr. 24 (citing Tr. 47-50, 242-45, 391, 495, 699).  The ALJ also detailed specific inconsistencies the activities noted in her treatment records, and Plaintiff's

ORDER ~ 13

allegations. For example, Dr. Williams noted that Plaintiff's "energy was sufficient to engage in activities of daily living"; she reported she enjoyed building birdhouses, which suggests she was able to engage in "pleasurable activities" despite her depression and PTSD symptoms; she "reported taking a train trip to pick up a vehicle from her child, which shows that she was able to travel independently both in a train and other people she was unfamiliar with and driving the vehicle she picked up back to her home"; she reported playing the violin and "did not report any concentration difficulties with playing"; "she reported going to a wedding, which suggests some capacity for managing social situations"; she attended a birthday party for her granddaughter "which again suggests she has some capacity for managing social situations"; she took a trip by herself in June 2018; and in late 2018 she pursued violin and stained glass art lessons, "which shows some ability to function outside of the home." Tr. 25 (citing Tr. 365, 428, 458, 473, 476 (noting she attended a wedding and she was "so glad" she did), 495, 607 (spent a few days on her boat on the coast), 654, 824, 1101). Finally, and "[m]ore significantly, she was able to complete a four-hour placement test for community college, and reported getting a good score, which seems inconsistent with the alleged memory and concentration limitations"; and "[h]er involvement in developing a retraining plan also seems inconsistent with [Plaintiff's] allegations of difficulty concentrating, and implies that [Plaintiff] thought she was capable of employment, which is inconsistent with the allegations of disability." Tr. 25 (citing Tr. 500-01, 611, 960).

ORDER ~ 14

First, Plaintiff generally contends that "the ALJ found [Plaintiff's] testimony inconsistent because she was capable of living alone." ECF No. 21 at 8. The Court agrees that this finding, standing alone, would not rise to the level of substantial evidence to discount Plaintiff's symptom claims of feeling uncomfortable around groups of people and having difficulty concentrating. However, as noted in detail above, the ALJ relied on extensive additional evidence of Plaintiff's activities that are inconsistent with these claimed limitations, including attending birthday parties and weddings, taking trips alone, completing placement tests, and engaging in developing a vocational retraining plan. Second, Plaintiff generally asserts that the ALJ "refused to allow counsel to ask questions regarding the etiology of [Plaintiff's] mental health conditions, as the ALJ found them irrelevant," and "[w]hile Social Security Disability does not care about causation necessarily, knowing about the causation can in fact add credibility to [Plaintiff's] symptom statements." ECF No. 21 at 9. However, Plaintiff does not cite, nor does the Court discern, any legal authority to support this contention. Moreover, as noted by Defendant, at the hearing "Plaintiff's attorney did not explain this theory to the ALJ, and appeared content to continue with the hearing." ECF No. 22 at 8 (citing Tr. 50, 55-57). Moreover, the hearing included uninterrupted testimony as to Plaintiff's symptom claims during the relevant adjudicatory period, regardless of causation; and the ALJ reviewed the entire record before issuing the decision, including "numerous medical records that discussed [Plaintiff's] dog attack and its residual effects in great detail." ECF No.

ORDER ~ 15

22 at 8-9; Tr. 18 (noting that ALJ considered entire record).  Thus, the Court finds

no error in the ALJ's refusal to consider additional testimony as to the alleged

cause of Plaintiff's symptom claims.

Finally, in her reply brief, Plaintiff argues that while she was able to engage

in the activities cited by the ALJ, "[t]he records support that when [Plaintiff]

engages in any level of social interaction, even with family for brief periods of

time, her anxiety levels rise and she becomes tearful and scared."  ECF No. 23 at 4

(citing Tr. 428, 476 (also noting that attending a wedding "was an important step in

beginning to reverse her avoidance), 824).  However, despite evidence that

Plaintiff still experienced some level of anxiety during social interactions, the

Court finds it was reasonable for the ALJ to conclude that Plaintiff's ability to

participate in documented activities, including attending birthday parties and

weddings, taking trips alone, caring for her personal care and a household, and

engaging in developing a vocational retraining plan, was inconsistent with her

allegations of incapacitating limitations.  Tr. 28; *Molina*, 674 F.3d at 1113

(Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the

extent that they contradict claims of a totally debilitating impairment); *See Burch*,

400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the

ALJ's conclusion must be upheld).  This was a clear and convincing reason to

discredit Plaintiff's symptom claims

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.[3]

## B. Medical Opinions

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all

---

[3] The ALJ additionally noted that Plaintiff's "apparent decision to not seek other employment due to the possibility of getting retraining paid for by the Workers Compensation claim suggests that the unemployment during at least part of the issue was not entirely related to her condition." Tr. 22-23. The Court declines to address this reasoning as it was not identified by either party, nor was it challenged in Plaintiff's opening brief. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). However, the Court notes that the ALJ may consider that a claimant is not working for reasons unrelated to the allegedly disabling condition when weighing symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

ORDER ~ 17

medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

ORDER ~ 18

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Plaintiff argues that the ALJ erroneously found the opinions of "one-time examiners and state agency consultants who never met [Plaintiff] to be more persuasive than her treating mental health provider, C. Donald Williams, M.D. . . . His opinion should have been the most persuasive of the mental health opinions based on his long-term relationship with [Plaintiff] and his regular administration of objective testing." [4] ECF No. 21 at 11.  Plaintiff's argument is inapposite.  As

---

[4] In her reply, Plaintiff additionally argues that even for claims filed on or after March 27, 2017, the ALJ "may only give less than full credit to uncontradicted treating or examining sources for clear and convincing reasons and such opinion, when contradicted, may only be given less than full weight for well-supported specific and legitimate reasons."  ECF No. 23 at 5-6.  However, the Court finds that resolution of whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining

noted by Defendant, "[b]ecause Plaintiff applied for benefits after March 27, 2017, the ALJ correctly applied the new regulations in considering the medical opinions at issue here." ECF No. 22 at 11. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). In particular, supportability and consistency are the most important factors; and therefore, the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Court may decline to consider this issue because Plaintiff fails to raise any specific challenge to the ALJ's evaluation of Dr. Williams' opinions under the

---

physician is unnecessary to the disposition of this case. "It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards." *Gary T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)).

ORDER ~ 20

new regulations.  *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to

address issue not raised with specificity in Plaintiff's briefing); *see also Kim v.*

*Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal

issues not "specifically and distinctly argued" in the party's opening brief).

Despite Plaintiff's waiver, the Court finds that the ALJ properly considered Dr.

Williams' opinions.  Tr. 23.  First, the ALJ found Dr. Williams' April 2017

statement that Plaintiff was "restricted from all work" was "an opinion on an issue

reserved for the Commissioner, and is neither persuasive nor useful in evaluating

[Plaintiff's RFC]."  Tr. 28.  The regulations are clear that the Commissioner is

"responsible for making the determination or decision about whether you met the

statutory definition of disability .... A statement by a medical source that you are

'disabled' or 'unable to work' does not mean that we will determine that you are

disabled." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also* §§ 404.1527(e)(3),

416.927(e) (3) ("[w]e will not give any special significance to the source of an

opinion on issues reserved to the Commissioner.").

Second, in November 2017, as noted by the ALJ, Dr. Williams reported that

Plaintiff "could be successful with employment if she had appropriate resources

and time," and "the best chance for returning to work was retraining through a two-

year program."  Tr. 28, 517.  The ALJ found this statement was unpersuasive

because it is "vague" about Plaintiff's limitations "other than noting her emotional

lability," and inconsistent with reports of improvement with treatment,

observations of fair-good concentration, and Plaintiff's independence in daily

ORDER ~ 21

living.  Tr. 28.  It is well-settled in the Ninth Circuit that where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions,"  *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  Moreover, the ALJ properly considered the supportability and consistency of Dr. Williams opinion under the new regulations, by finding (1) "[Dr. Williams] most often described [Plaintiff's] lability as mild, which suggest that lability would not completely prevent [Plaintiff] from working"; and (2) his opinion was inconsistent with reports of Plaintiff's improvement with treatment, observations of fair-good concentration, and independence in activities of daily living.  Tr. 28.

Third, in December 2017, Dr. Williams opined that Plaintiff could not work as a general clerk, outside deliverer, bartender, or housecleaner "as these occupations involve relating to others."  Tr. 28.  As above, the ALJ properly found this "is an opinion reserved for the Commissioner, and is neither persuasive nor useful in evaluating [Plaintiff's RFC].  Dr. Williams seems to imply that [Plaintiff] can handle no level of interaction with others, but as discussed [in the decision], she is mostly bothered by being around people she does not know or dogs, which is inconsistent with finding that she is completely unable to interact with others. Moreover, such an opinion would be inconsistent with the improvements in mental symptoms with treatment, and the reports of activities such as shopping in stores, going to weddings and birthday parties, and meeting with community college

ORDER ~ 22

personnel to participate in a placement examination or to make inquiries about retraining programs." Tr. 28. Based on the foregoing, and particularly in light of Plaintiff's failure to raise any challenge to the ALJ 's evaluation of Dr. Williams' opinions under the new regulations, the Court finds no error in the ALJ's consideration of the medical opinion evidence.[5]

## C. Step Three

At step three of the sequential evaluation of disability, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major

---

[5] Plaintiff additionally argues, without citation to legal authority, that "[s]ince the ALJ restricted any testimony regarding the relationship she had with [the independent medical evaluators], the ALJ improperly found non-treating providers to be more persuasive than treating providers." ECF No. 21 at 11-12. This argument is unavailing. First, the Court notes that the hearing transcript indicates that Plaintiff did testify at some length about her experiences with examining and treating providers. *See* Tr. 52-55. Moreover, as noted by Defendant, Plaintiff fails to challenge the ALJ's findings as to the persuasiveness of these providers. See Tr. 25-29. For these reasons, the Court declines to address this issue. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing); *Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination).

ORDER ~ 23

body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R. § 416.925(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch*, 400 F.3d at 683.

In determining whether a claimant's mental impairments meet a listing, the ALJ considers (1) whether specified diagnostic criteria ("paragraph A" criteria) are met, and (2) whether specified functional limitations ("paragraph B" criteria) are present. 20 C.F.R. § 416.920a. To meet listing 12.08, personality and impulse-control disorders, a claimant who satisfies the paragraph A criteria must also satisfy paragraph B criteria, which includes at least one extreme or two marked limitations in these four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. § 404, Subpt P, App'x I. "Marked" means more than moderate but less than extreme. *Id.* Moreover, to meet listing 12.15, trauma-and stressor-related disorders, a claimant who satisfies the paragraph A criteria must also satisfy paragraph B criteria, or paragraph C criteria, which requires that a claimant's "mental disorder in this listing category is 'serious and persistent;' that is, you have a medically

ORDER ~ 24

documented history of the existence of the disorder over a period of at least two years," and there is evidence of ongoing medical treatment that diminishes symptoms and signs of the medical disorder, and "marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."  20 C.F.R. § 404, Subpt P, App'x I.

Here, the ALJ concluded that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04, 12.06, 12.08, and 12.15.  Tr. 33.  Plaintiff generally argues that the "ALJ erred in failing to allow [Plaintiff] to testify at the hearing regarding critical issues that could have led to a finding that [Plaintiff] meets Listing 12.08 or 12.15."  ECF No. 21 at 15-21.  In particular, Plaintiff argues that "the ALJ failed to conduct a full and fair hearing by not allowing [Plaintiff] to testify about the reasons behind her mental health conditions or her relationship with the different doctors who provided treatment."  ECF No. 21 at 19.  As an initial matter, the Court notes that the only legal authority Plaintiff cites in support of this argument s a general reference to "SSR 13-1." ECF No. 21 at 15.  However, the Court notes that SSR 13-1 addresses "Agency Processes for Addressing Allegations of Unfairness, Prejudice, Partiality, Bias, Misconduct, Or Discrimination by [ALJs]."  SSR 13-1p, *available at* 2013 WL 633939 (Jan. 29, 2013).  Plaintiff makes no argument as to agency processes, and therefore this authority appears inapplicable to Plaintiff's argument as to whether the ALJ conducted a full and fair hearing.  Moreover, to the extent that Plaintiff is arguing bias on the part of the ALJ, she offers no legal argument or evidence of

ORDER ~ 25

bias within the context of this case, and certainly nothing "so extreme as to display clear inability to render fair judgment." *Rollins v. Massanari,* 261 F.3d 853, 858 (9th Cir.2001) (ALJs are presumed to be unbiased within the conduct of their official duties).  As discussed in detail above, a plain reading of the hearing transcript indicates that Plaintiff testified at length about her experiences with treating and examining providers; and as to the "reasons behind her mental health conditions," Plaintiff herself acknowledges in her briefing that "Social Security Disability does not care about causation necessarily."  ECF No. 21 at 9.  The ALJ properly allowed Plaintiff to testify about her symptoms during the relevant adjudicatory period, and as noted by Defendant, appeared to show concern for her well-being when she began crying during the hearing.  Tr. 55.  Finally, "numerous medical records discussed her dog attack and its residual effects in great detail."  ECF No. 22 at 9 (citing Tr. 241, 340, 354, 366, 375, 377, 388, 470, 687, 690-95, 722, 726).  For all of these reasons the Court finds the ALJ conducted a full and fair hearing.

As a final matter, particularly with regard to the step three findings, Plaintiff's argument is inapposite because, as noted by Defendant, the criteria to establish disability under Listing 12.08 and 12.15 requires "medical documentation" of paragraph A criteria.  20 C.F.R. § 404, Subpt P, App'x I.  "Plaintiff's hearing testimony is not medical documentation. As such, Plaintiff's argument fails."  ECF No. 22 at 14.  In order to satisfy the criteria for paragraph A of Listing 12.15, Plaintiff must provide medical documentation of the "all of the

ORDER ~ 26

following": exposure to actual or threatened death, serious injury or violence, subsequent involuntary re-experiencing of the traumatic event, avoidance of external reminders of the event, disturbances in mood and behavior, and increases in arousal and reactivity. 20 C.F.R. § 404, Subpt P, App'x I.  In her briefing, Plaintiff argues that the record contains evidence of distrust and suspiciousness of others, intrusive memories of the traumatic dog attack, avoidance behavior, and hyper-startle reaction, as required to meet as required to meet paragraph A of Listing 12.15.  ECF No. 21 at 16-19 (citing Tr. 345-47, 365-66, 392-94, 760).  However, each Listing sets forth the "symptoms, signs, and laboratory findings" that must be established in order for claimant's impairment to meet the listing. *Tackett,* 180 F.3d at 1099.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original).  Thus, regardless of whether Plaintiff met the criteria of paragraph A in either listing, she would have to also meet the criteria for paragraph B to meet Listing 12.08, and paragraph B or C to meet Listing 12.15.  *See* 20 C.F.R. § 404, Subpt P, App'x I..

Here, the ALJ found the paragraph B criteria were not satisfied because Plaintiff had no limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; mild limitations with regard to concentrating, persisting, or maintaining pace; and mild limitations in adapting and managing oneself.  Tr. 19-20.  Plaintiff argues that Dr. Williams'

ORDER ~ 27

records "establish" that Plaintiff meets the criteria for both Listing 12.08 and 12.15 "with a severe limitation in interacting with others."  ECF No. 21 at 17 (citing Tr. 410-11 (April 2017 assessment of "extreme" limitation on getting along with people), Tr. 382 (January 2016 finding Plaintiff was unable to interact with others appropriately and she would be unable to work temporarily until her psychiatric symptoms resolved).  However, Plaintiff fails to identify or challenge the ALJ's finding that Plaintiff was only moderately limited in the ability to interact with others.  Tr. 19; *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing). Moreover, the ALJ properly supported this finding with evidence, including a state agency opinion that Plaintiff was only moderately limited in this area, "which is consistent with the evidence of record," and ongoing evidence of improvement with treatment.  Tr. 19, 92, 526, 539, 552, 626, 896 ("metrics reflect gradual steady improvement"), 908, 926, 960, 1053-54 (noting overall objective evidence of improvement), 1076, 1128, 1144. For all of these reasons, despite evidence that could be considered favorable to Plaintiff, she fails to show error in the ALJ's conclusion that Plaintiff's impairments do not satisfy the paragraph B criteria.  Moreover, even assuming, *arguendo*, that the ALJ erred in finding Plaintiff did not have a marked limitation in her ability to interact with others, any error is harmless because Plaintiff fails to identify at least two "marked" or one "extreme" limitations, as required to satisfy paragraph B criteria.  Tr. 19-20; *see Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination).

ORDER ~ 28

In addition, the ALJ found that the evidence fails to establish the presence of the paragraph C criteria; and more specifically, the "evidence does not show that [Plaintiff] has achieved only marginal adjustment with medical treatment, mental healthy therapy, psychosocial support, or a highly structured setting, and has minimal capacity to adapt to changes in their environment or to demands not already part of one's daily life." Tr. 20. Plaintiff generally argues that her mental disorder is "serious and persistent," and in support of this argument she cites evidence from mental health providers that there is a continued need for ongoing mental health treatment in order to "maintain improvement and succeed in vocational training," and that Plaintiff is "still very compromised outside of treatment." ECF No. 21 at 20 (citing Tr. 368, 483, 1067-71, 1126). However, in order to meet paragraph C, in addition to evidence of ongoing medical treatment that diminishes the symptoms of her mental disorder, there must be evidence of "marginal adjustment, that is [she] has minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." 20 C.F.R. § 404, Subpt P, App'x I. As noted by Defendant, and discussed in detail above, Plaintiff had "significant" gains with therapy across the longitudinal record "as shown by her monthly depression, anxiety, and PTSD screenings." ECF No. 22 at 16. Thus, regardless of Plaintiff's ongoing treatment for her mental health complaints, the Court finds no error in the ALJ's finding that the evidence fails to establish the presence of paragraph C criteria.

For all of these reasons, Plaintiff fails to show error in the ALJ's conclusion that her impairments did not meet Listing 12.08 or 12.15.

**D. Step Five**

Finally, Plaintiff argues that "[b]ecause the ALJ failed to properly consider the medical opinion evidence and symptom testimony, the ALJ's RFC assessment does not account for the full extent of [Plaintiff's] functional limitations and, thus, cannot support the ALJ's disability determination." [6]  ECF No. 21 at 13-15. Plaintiff is correct that "[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir.2009) (citation and quotation marks omitted).  However, as discussed in detail above, the ALJ's evaluation of the medical opinions, and Plaintiff's subjective testimony, was supported by the record and free of legal error.  The hypothetical proposed to the

---

[6] Plaintiff cites limitations opined by examining providers Dr. Jean Dalpe, Dr. Jeralyn Jones, and Dr. Ronald Early, in support of this argument.  ECF No. 21 at 20.  However, Plaintiff fails to argue that the ALJ improperly considered these opinions in her opening brief; thus, the Court declines to address whether the ALJ properly incorporated limitations assessed by those providers into the RFC.  *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing).

vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record.  The ALJ did not err at step five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ did not err at step three, provided clear and convincing reasons to discount Plaintiff's symptom claims, properly weighed the medical opinion evidence, and did not err at step five.  After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 21, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 22, is

   **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgement shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** November 29, 2021.

LONNY R. SUKO
Senior United States District Judge